UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
                                                                  :

JODY-ANN CAMPBELL,                                :

                                                  Plaintiff,      :

                                                                 :          22-CV-10164 (VSB)

                 - against -                   :

                                                                  :          **OPINION & ORDER**

COLUMBIA UNIVERISITY, ZELON         :
CRAWFORD, and TRUDY STAPLETON-  :
TRUGLIA,                                           :

                                                     Defendants.  :

------------------------------------------------------------X

Appearances:

Jody-Ann Campbell
Sicklerville, New Jersey
*Pro Se Plantiff*

Geoffrey Cajigas
Timothy Michael Haggerty
Friedman Kaplan Seiler Adelman & Robbins LLP
New York, New York
*Counsel for Defendants*

VERNON S. BRODERICK, United States District Judge:

       Plaintiff Jody-Ann Campbell ("Campbell"), proceeding pro se, brings this action against Columbia University ("Columbia") for intentional infliction of emotional distress. Columbia moves to dismiss Campbell's amended complaint for failure to state a claim. (Doc. 51.) Because Plaintiff fails to allege a plausible claim, Defendant's motion to dismiss is GRANTED, and because I find that further amendment of the complaint would be futile this action is dismissed with prejudice.

I. **Background and Procedural History**

   A. *Initial Case*

Campbell first brought a claim against Columbia on September 27, 2022, in a separate action in this District. *See Campbell v. Columbia University School of Professional Studies et al.*, No. 22-cv-8255 (LTS) (S.D.N.Y. Sept. 27, 2022), Doc. 1 ("*Campbell I*"). In *Campbell I*, Plaintiff asserted claims against the Columbia University School of Professional Studies and the Columbia University Office of the President in the City of New York for intentional infliction of emotional distress, discrimination, and violations of various civil rights. *Id.* 11. The conduct underlying the *Campbell I* complaint concerned Campbell's application to Columbia's Negotiation and Conflict Resolution program for which Plaintiff sought a scholarship award through the "Impact HBCU Fellowship." *Id.* Although she was admitted to the Negotiation and Conflict Resolution program, she was denied the Impact HBCU Fellowship. *Id.* The denial of this fellowship caused her to fall into a depression and based on this the head of the fellowship program at Columbia "wanted her to die." *Id.* 12.

On October 21, 2022, Chief Judge Laura Taylor Swain ordered Campbell to amend her complaint. *Campbell I*, Doc. 4. Liberally interpreting Campbell's initial complaint, Chief Judge Swain found that Campbell's constitutional claims brought under 28 U.S.C. § 1983 could not lie because Columbia is a private entity, *id.* 5, claims under the Equal Education Opportunities Act could not lie because Columbia was not an educational agency subject to suit under that act, *id.* 6, and that Campbell had failed to allege a colorable discrimination claim, *id.* 7. However, Chief Judge Swain granted permission to Campbell to amend her complaint to address deficiencies with her discrimination claims and to demonstrate diversity jurisdiction over her state law claims. *Id.* 7–8.

Campbell filed her amended complaint on October 25, 2023. *Campbell I,* Doc. 5. In it, she alleged that Zelon Crawford ("Crawford"), who oversaw the Impact HBCU Fellowship, and another Columbia employee, Trudy Stapleton-Truglia ("Stapleton-Truglia"), inflicted emotional distress on her by denying her access to the Impact HBCU Fellowship. *Id.* 7. Rather than receiving the fellowship or grant support, Campbell received $93,000 in student loans. *Id.* 10. After being denied the fellowship, Campbell reported depression and hormonal imbalances that ultimately led to a trip to the emergency room. *Id.* 9.

Chief Judge Swain dismissed this amended complaint on November 4, 2023, because Campbell failed to establish the existence of diversity jurisdiction by failing to plead the citizenship of Crawford and Stapleton-Truglia. *Campbell I,* Doc. 6 at 6. Although this deficiency might have been addressed through further amendment, Chief Judge Swain also found that amendment would be futile because Campbell could not show the kind of "extreme and outrageous conduct" required for an intentional infliction of emotional distress claim. *Id.* 7 ("Although Plaintiff's disappointment at not being selected for a fellowship or grant is understandable, these facts cannot state a claim for intentional infliction of emotional distress.").

### B.   *Initiation of This Case and Motion to Dismiss*

Campbell initiated the present case ("*Campbell II*") on November 30, 2022. (Doc. 1.)[1] This complaint was substantially the same as her amended complaint in *Campbell I*, and repeated allegations that Crawford and Stapleton-Truglia, and by extension Columbia, intentionally inflicted emotional distress on her by failing to admit her to the Impact HBCU Fellowship or otherwise provide her with educational grant support. (*See id.*) After filing *Campbell II*, Campbell filed a series of letters that raised what would become recurring themes in Campbell's

---

[1] Unless otherwise noted, all "Doc." references are to the docket in this matter.

filing practices: that Columbia and its employees want to kill her and want her to die (Doc. 2 at 1–2), and that Columbia's failure to answer all of her various letters is an admission of guilt, (*id*.).

Campbell followed these filings with additional letters and requests, including a request to proceed *in forma pauperis*, (Doc. 6), which was granted, (Doc. 14.), and a request to remove Crawford and Stapleton-Truglia from the action, (Doc. 12), which was also granted, (Doc. 20). Due to the dismissal of Crawford and Stapleton-Truglia, I found there was no cause to transfer this case back to Chief Judge Swain, who handled the dismissal of *Campbell I*. (Doc. 30.) Moreover, as a result of the dismissal of these parties, the diversity concerns that were fatal to *Campbell I* were no longer a concern. Given this, and the admonition from the Court of Appeals that "dismissing a case without an opportunity to be heard is, at a minimum, bad practice in numerous contexts and is reversible error in others," *Catzin v. Thank You & Good Luck Corp.*, 899 F.3d 77, 82 (2d Cir. 2018), I permitted Campbell's case against Columbia to go forward.

Campbell amended her complaint on January 24, 2023, (Doc. 31), and Columbia moved to dismiss the amended complaint on March 2, 2023, (Docs. 51–52). Campbell filed several letters in response to this motion. (Docs. 53, 63, 69.) She also moved to compel discovery from Columbia, (Doc. 54), and then attempted to obtain a default notwithstanding Columbia's appearance and motion to dismiss, (Doc. 58). I denied the motion to compel as premature and the motion for default as improper given Columbia's motion to dismiss. (Doc. 62.)

Campbell also filed numerous papers seeking to increase the damages sought, (Docs. 2, 7, 18), moving for various forms of relief such as expedited action on her papers or preemptive denials of extensions for Columbia, (Docs. 32, 48), and adding additional information or papers she wished considered as part of her action, (Docs. 3–5, 10–11, 13, 15, 17, 26–29, 33, 35–36,

4

41).  She also added factual allegations or elaborated on claims made in her amended complaint, such as claims that Columbia asked the police to initiate a wellness check that resulted in her being committed to and then released from a psychiatric facility.  (Docs. 29, 35, 38.)[2]  In several letters, Plaintiff indicated that she was suffering mental health challenges and requested additional or immediate remedies from Columbia based on those challenges.  (Docs. 7, 35, 38.)  As I stated in an order entered March 10, 2023, these letters "increasingly resorted to unprofessional, improper, and abusive language specifically directed at opposing counsel."  (Doc. 62 (citing Doc. 57).)

My efforts to balance Campbell's right to be fully heard with the need to preserve decorum, prevent abuse of the docket, and limit the burdens imposed on Columbia of responding to dozens of dubiously supported and duplicative filings met with limited success.  On February 8, 2023, after Campbell filed her amended complaint, but prior to Columbia's motion to dismiss, I entered an order stating that, given that the volume of material already filed, the submission of additional materials prior to the filing of Columbia's motion to dismiss would be unhelpful to the adjudication of this case.  (Doc. 44.)  Despite this, Campbell quickly filed an additional letter, (Doc. 48), and, in response to a brief delay in docketing that submission, called my chambers, called this District's Pro Se Intake Unit, and emailed my chambers.  (*See* Doc. 46 at 1–2.)  Accordingly, I entered an order again cautioning her against the filing of superfluous and unsupported papers on the docket, while permitting her to continue to file letters.  (*Id.* 3.)  This proved ineffective at encouraging Plaintiff to adopt a more productive approach to litigating this case.  Accordingly, on March 10, 2023, I entered an order that cautioned Campbell against filing

---

[2] Columbia states that, based on Plaintiff's stated intentions to self-harm, it requested that local police conduct a wellness check on Campbell.  (Doc. 8.)  There is no indication in the record that Columbia sought a specific outcome from that check.

5

further abusive letters and stating that Columbia need not respond to further filings unless specifically directed to by me.  (Doc. 62 at 2–3.)

### C. *Subsequent Proceedings*

Following briefing on Columbia's motion to dismiss, Campbell continued to make numerous submissions, sometimes filing multiple documents in a single day.  However, the tenor and focus of these filings shifted from her previous filings.  While Campbell's prior materials focused on the denial of her fellowship, her allegations following the motion to dismiss morphed into a far-reaching conspiracy involving collusion between Columbia and numerous figures, including high-level officials in the state government of Pennsylvania.  The essence of these claims is that Columbia bribed the governor of Pennsylvania and a range of other officials to target Campbell and interfere with this lawsuit.  (*See, e.g.*, Doc. 85 at 1, Doc. 90, Doc. 93 at 3–4.)  To carry out this interference, the governor had a member of his staff ("Staff Member") file a false police report.  (Doc. 85 at 1.)  While Campbell does not describe the precise nature of this report, she attaches Pennsylvania state court papers to one of her letters, in which Pennsylvania prosecutors allege that Campbell "sent hundreds of harassing emails to" the Staff Member, and that these emails included both sexual advances and threats of physical and sexual violence.  (Doc. 108-1 ¶¶ 2 a–d.)

Since the filing of this purportedly false police report, Campbell states that she has been the target of numerous criminal investigative and judicial proceedings including the subpoenaing of her email account, (Doc. 88), a preliminary hearing in which Campbell reports that she was escorted from the courthouse after accusing the judge of corruption, (Doc. 99)[3], the subsequent

---

[3] The motion to modify Campbell's bail which she attached to a filing similarly alleges that on May 17, 2023, Campbell appeared for a preliminary hearing at which she fired her public defender, proceeded pro se, and then prevented the hearing from proceeding by engaging in numerous angry outbursts. (Doc. 108-1 ¶¶ 6–8.)  She was then escorted from the courthouse by police.  (*Id.* ¶ 8.)

6

revocation of her bail, (Doc. 101), and the delay of criminal proceedings against her, (Doc. 106). As further evidence of this purported conspiracy, Campbell filed a "letter" purportedly written by members of the governors' staff confessing to the alleged scheme. (Doc. 94.)[4] She also filed a complaint with the Pennsylvania Office of the Attorney General, who declined to investigate her claims. (Doc. 107.) Aside from these criminal proceedings, she alleges various attacks by unknown figures purportedly associated with Columbia University, (Docs. 66–67, 74, 78, 81, 86), and death threats delivered by Columbia's Board of Trustees, (Docs. 80, 89).[5]

Campbell also continued to file motions for various types of relief, including requests to file supplemental pleadings and complaints pursuant to Fed. R. Civ. P. 15(d) describing this alleged conspiracy, (Docs. 70–72), a request to transfer her case to be adjudicated alongside an unrelated case before Judge Paul G. Gardephe in this District, (Doc. 79), motions for summary judgment or to expedite the same, (Docs. 82, 84, 91), a motion to compel discovery, (Doc. 87), and motions seeking, alternatively, to seal, withdraw a seal, and then re-seal this case, (Docs. 83, 92, 100). I did not direct Columbia to respond to these motions or other papers given the posture of the case and Columbia, consistent with my order at Doc. 62, did not file any. Despite this, Campbell continued to perceive Columbia's lack of filing as admissions of guilt. (*See, e.g.*, Docs. 65, 98, 105.)

The supplemental complaints Campbell proposes to file reference her initial complaint

---

[4] The almost inescapable conclusion from a brief review of this letter is that Campbell is the author. This "confession" is written in Campbell's style, and while framed as a letter exposing a conspiracy, spends substantial time lavishing praise on Campbell for her intellect, beauty, and character. (*See generally* Doc. 94.)

[5] Again, it is difficult to read these purported threat letters without concluding that Campbell authored them. In addition to the sheer implausibility of Columbia's Board of Trustees collectively writing a death threat, and then mailing it from Columbia's address, (Doc. 80 at 2), the letter follows her writing style closely. Furthermore, despite ostensibly being a death threat, the letter spends substantial time complementing Campbell for her academic achievements, (*id*. 3) and confirming that various people have deep respect for her or are in love with her, (*id*. 4). The second letter is a similarly written discussion of her relationship with the Staff Member who allegedly filed the false police report.

7

and proffer additional facts. Specifically, they allege that Columbia hired people to assassinate her, (Doc. 71 ¶¶ 1–2, 17, 21; Doc. 72 ¶¶ 6, 8), spy on her, (Doc. 71 ¶ 8), and that Columbia conspired with the governor of Pennsylvania to inflict emotional distress on her and kill her, (*see generally* Doc. 72). Campbell also continued to make numerous other miscellaneous filings. (Docs. 64, 65, 75, 77, 95, 97, 103, 105, 108.)

## II. Legal Standards

### A. *Failure to State a Claim*

Rule 12(b)(6) requires a complaint to include enough facts to state a claim for relief "that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 569 (2007). A claim is facially plausible if the plaintiff pleads enough factual detail to allow the court to draw the inference that the defendant is liable for the alleged misconduct. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In evaluating a complaint, a court "must accept as true all factual allegations in the complaint and draw all reasonable inferences" in a plaintiff's favor. *Cruz v. Gomez*, 202 F.3d 593, 596 (2d Cir. 2000). Additionally, pro se pleadings are to be construed liberally, *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009), and interpreted to raise the "strongest [claims] that they suggest." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (internal quotation marks omitted).

However, the "special solicitude" offered to pro se litigants, *id.* at 475 (citation omitted), has limits. "A court may dismiss a claim as factually frivolous if the sufficiently well-pleaded facts are clearly baseless—that is, if they are fanciful, fantastic or delusional," *Gallop v. Cheney*, 642 F.3d 364, 368 (2d Cir. 2011) (cleaned up), even if a litigant is proceeding pro se, *see, e.g.*, *Weir v. City of New York*, No. 22-426, 2023 WL 3001136, at *1 (2d Cir. Apr. 19, 2023), *Arcamone v. Kopnisky*, 857 F. App'x 694, 697 (2d Cir. 2021), *Mira v. Kingston*, 715 F. App'x

28, 30 (2d Cir. 2017), *Igarashi v. Skulls & Bones*, 438 F. App'x 58 (2d Cir. 2011).

"The Court is limited to consideration of the facts as stated in the complaint, any documents which are attached to the complaint, and any documents which are incorporated by reference into the complaint." *Hofelich v. Ercole*, No. 07 CIV. 8059 PKC DFE, 2008 WL 2796636, at *2 (S.D.N.Y. July 17, 2008) (citing *Newman & Schwartz v. Asplundh Tree Expert Co.*, 102 F.3d 660, 662 (2d Cir. 1996)).  Additionally, "[t]he Court may consider documents annexed to the complaint or incorporated by reference into the complaint without converting the motion into a motion for summary judgment." *Hofelich*, 2008 WL 2796636, at *2 (citing *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.*, 62 F.3d 69, 72 (2d Cir. 1995)).  "Even where a document is not incorporated by reference, the court may nevertheless consider it where the complaint relies heavily upon its terms and effect, which renders the document integral to the complaint."  *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002).  As well, particularly in pro se cases, a court may also consider material raised by a pro se plaintiff in a brief opposing a dispositive motion such as a motion to dismiss.  *Nielsen v. Rabin*, 746 F.3d 58, 63 (2d Cir. 2014).

### B.  *Intentional Infliction of Emotional Distress*

The New York state law tort of intentional infliction of emotional distress "has four elements:  (1) extreme and outrageous conduct, (2) intent to cause severe emotional distress, (3) a causal connection between the conduct and the injury, and (4) severe emotional distress." *Bender v. City of New York*, 78 F.3d 787, 790 (2d Cir. 1996).  Extreme and outrageous conduct is conduct "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society." *Stuto v. Fleishman*, 164 F.3d 820, 827 (2d Cir. 1999) (internal quotation marks omitted).  Such

9

conduct generally involves "some combination of public humiliation, false accusations of criminal or heinous conduct, verbal abuse or harassment, physical threats, permanent loss of employment, or conduct contrary to public policy." *Id.* at 828. "Whether the conduct alleged may reasonably be regarded as so extreme and outrageous as to permit recovery is a matter for the court to determine in the first instance." *Id.* at 827. "New York sets a high threshold for conduct that is 'extreme and outrageous' enough to constitute intentional infliction of emotional distress." *Bender*, 78 F.3d at 790. Thus, "'this highly disfavored cause of action is almost never successful'" and "such claims are 'routinely dismissed on pre-answer motion.'" *Sesto v. Slaine*, 171 F. Supp. 3d 194, 202 (S.D.N.Y. 2016) (quoting *Guan N. v. NYC Dep't of Educ.*, No. 11–cv–4299, 2013 WL 67604, at *25 (S.D.N.Y. Jan. 7, 2013)).

### C. *Sealing of Cases and Records*

"The burden of demonstrating that a document submitted to a court should be sealed rests on the party seeking such action." *DiRussa v. Dean Witter Reynolds Inc.*, 121 F.3d 818, 826 (2d Cir. 1997). When a party requests sealing, the court must evaluate that request under the press and public's "qualified First Amendment right to attend judicial proceedings and to access certain judicial documents," *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 120 (2d Cir. 2006) (quoting *Hartford Courant Co. v. Pellegrino*, 380 F.3d 83, 91 (2d Cir. 2004)), such as complaints, *Bernstein v. Bernstein Litowitz Berger & Grossmann LLP*, 814 F.3d 132, 141 (2d Cir. 2016). Where a First Amendment right of access applies, "documents may be sealed if specific, on the record findings are made demonstrating that closure is essential to preserve higher values and is narrowly tailored to serve that interest." *Lugosch*, 435 F.3d at 120 (cleaned up). The standard is even higher when a litigant seeks to seal an entire case. "Because the public can never evaluate a case that remains permanently sealed, a Court may only permit the

10

sealing of an entire case file as a last resort." *Mamatkulov v. City Univ. of New York*, No. 22 CIV. 4131 (JPC), 2023 WL 358790, at *2 (S.D.N.Y. Jan. 22, 2023).  Given this, courts routinely deny requests to seal an entire case.  *See, e.g.*, *United States ex rel. SFN Partners, LLC v. Post Acute Partners, LLC*, No. 20 CIV. 8262 (JPC), 2022 WL 1171294, at *2 (S.D.N.Y. Apr. 20, 2022); *Next Caller Inc. v. Martire*, 368 F. Supp. 3d 663, 667 (S.D.N.Y. 2019).

### D.  *Leave to Amend*

Leave to amend a complaint should be freely give "when justice so requires."  Fed. R. Civ. P. 15(a)(2).  Although pro se plaintiffs are generally given leave to amend a deficient complaint, *see Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 795–96 (2d Cir. 1999) (per curiam), a district court may deny leave to amend when amendment would be futile because the problem with the claim "is substantive [and] better pleading will not cure it," *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000).  Additionally, leave to amend is properly denied where all indications are that the pro se plaintiff will be unable to state a valid claim.  *See Valle v. Police Dep't Cnty. of Suffolk Cent. Records*, No. 10 Civ. 2847, 2010 WL 3958432, at *2 (E.D.N.Y. Oct. 7, 2010); *see also Coleman v. brokersXpress, LLC*, 375 F. App'x 136, 137 (2d Cir. 2010) (summary order) (denial of leave to amend affirmed where pro se plaintiff had already had opportunity to amend once and made no specific showing as to how he would remedy defects in complaint); *In re Eaton Vance Mut. Funds Fee Litig.*, 380 F. Supp. 2d 222, 242 (S.D.N.Y. 2005) (denying leave to amend because "the plaintiffs have had two opportunities to cure the defects in their complaints, including a procedure through which the plaintiffs were provided notice of defects in the Consolidated Amended Complaint by the defendants and given a chance to amend their Consolidated Amended Complaint," and "plaintiffs have not submitted a proposed amended complaint that would cure these pleadings defects"), *aff'd sub nom. Bellikoff*

11

*v. Eaton Vance Corp.*, 481 F.3d 110, 118 (2d Cir. 2007).  In making this determination, "courts commonly look to proposed amendments to determine futility."  *Panther Partners Inc. v. Ikanos Commc'ns, Inc*., 347 F. App'x 617, 622 (2d Cir. 2009).

Pursuant to Fed. R. Civ. P. 15(d), "[o]n motion and reasonable notice, the court may, on just terms, permit a party to serve a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented."  The "Rule 15(d) standard is functionally identical to the standard set forth in Rule 15(a)" save that supplemental pleadings address events that happen after the date of the original pleading.  *Willie Bright v. Anthony J. Annucci*, No. 18 CIV. 11111 (NSR), 2023 WL 5803648, at *3 (S.D.N.Y. Sept. 6, 2023).

### III.  Discussion

#### A.  *Motion to Dismiss*

Campbell does not plausibly allege any claims on which relief can be granted.  In addressing these claims, I have, in line with the special solicitude afforded pro se litigants, *Triestman*, 470 F.3d at 475, considered Campbell's complaints, various opposition papers, and documents either attached to those materials or referenced by them, *Hofelich*, 2008 WL 2796636, at *2; *Nielsen*, 746 F.3d at 63; *Chambers*, 282 F.3d at 153.  Because Campbell has filed numerous letters, supplemental pleadings, and notices that build on one another, this solicitude has, in essence, resulted in my consideration of the full spectrum of Campbell's pleadings to date.

Taking this record together and construing it liberally reveals two causes of action.  The first cause of action is the intentional infliction of emotional distress claim, (Doc. 31 ¶ 1), based on Columbia's failure to award Campbell a scholarship through the Impact HBCU Fellowship,

(*id.* ¶ 24) or any other grant or work study-based support to allow her to attend Columbia, (*id.* ¶¶ 41–42). Campbell alleges that this occurred because "Columbia University wanted [her] to die." (*Id.* ¶ 118.) She further alleges that she "suffered from continual blood loss, anemia, anxiety, depression, shakes, shills, vomiting, body aches, nightmares, [and] hot flashes, due to her trauma of not being selected for the fellowship, being denied financial aid, and being ignored by [Columbia personnel]." (*Id.* ¶ 64.)

Taking all of these as true for the purposes of Columbia's motion to dismiss, Campbell does not plead a claim for intentional infliction of emotional distress. The four elements of a claim of intentional infliction of emotional distress are "(1) extreme and outrageous conduct, (2) intent to cause severe emotional distress, (3) a causal connection between the conduct and the injury, and (4) severe emotional distress." *Bender*, 78 F.3d at 790. Columbia challenges only the first two elements (extreme and outrageous conduct and intent to cause the same), and so does not suggest, taking Campbell's allegations as true, that she has failed to allege causation or severe emotional distress. (Doc. 52 at 8–11.)

Beginning with the first element, Campbell's allegations do not meet New York's "high threshold for conduct" that is "extreme and outrageous." *Bender*, 78 F.3d at 790. This element is "most susceptible to determination as a matter of law." *Rich v. Fox News Network, LLC*, 939 F.3d 112, 122 (2d Cir. 2019).

Chief Judge Swain previously dismissed Plaintiff's complaint on this ground, noting in *Campbell I*, "[a]lthough Plaintiff's disappointment at not being selected for a fellowship or grant is understandable, these facts cannot state a claim for intentional infliction of emotional distress." *Campbell I*, Doc. 6 at 7. This holding applies with equal force here. Denying a student like Plaintiff a fellowship or grant funding is not an act "so outrageous in character, and so extreme in

13

degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society." *Stuto*, 164 F.3d at 827.  Every year, thousands of students across the United States receive unfavorable academic fellowship or financial aid decisions.  While such decisions are understandably disappointing, they do not involve the "combination of public humiliation, false accusations of criminal or heinous conduct, verbal abuse or harassment, physical threats, permanent loss of employment, or conduct contrary to public policy" necessary to show outrageous conduct.  *Id.* at 827.

Campbell also fails to plausibly allege the second element:  that Columbia intended to cause severe emotional distress.  This element is satisfied when a defendant intentionally causes emotional distress or disregards a substantial probability of causing severe emotional distress. *Rich*, 939 F.3d at 124.  Intent must frequently inferred from a defendant's actions and "the very nature of a defendant's act may lead a fact finder to infer that the act was done with intent." *Richard L. v. Armon*, 144 A.D.2d 1, 5, 536 N.Y.S.2d 1014, 1017 (2d Dep't 1989).  Additionally, knowledge of the particular sensitivity of a defendant can support a finding of intentional infliction of emotional distress," so long as the acts complained of are not "too mundane to give rise to a colorable claim."  *Santos v. Gen. Elec. Co.*, No. 10 CIV. 6948 JSR MHD, 2011 WL 5563544, at *11 (S.D.N.Y. Sept. 28, 2011), report and recommendation adopted, No. 10 CIV. 6948 JSR, 2011 WL 5563536 (S.D.N.Y. Nov. 15, 2011).

Construing her allegations on this point liberally, as I must, Campbell asserts that various Columbia officials knew that she was at risk for various mental health issues and could not attend Columbia without financial aid because she disclosed this to Columbia officials in various communications.  (Doc. 31 ¶¶ 27, 30–31, 35, 38–44, 72, 74, 75–76).  Despite this, Columbia and its officials refused to provide her with financial aid because they wanted her to die.  (*Id.* ¶¶ 106–

14

07, 109–12, 118.)  Even accepting that Columbia knew of Campbell's particular medical sensitivities, the denial of student aid from which she seeks to infer intentional or reckless infliction of emotional distress are the kind of mundane acts, *Santos*, 2011 WL 5563544, at *11, that happen to thousands of students every year.  Nowhere in Campbell's voluminous filings is there any evidence, no matter how liberally construed, of actual personal animus, ill-will, or malice towards her by Columbia staff that would provide a basis to infer an intent to inflict distress.

Campbell's second cause of action is the somewhat more nebulous set of conspiracy claims based on alleged collusion between Columbia and the governor of the state of Pennsylvania, as well as alleged harassment by various unknown assailants employed by Columbia to prevent her from continuing this lawsuit.  Campbell has proposed that these allegations similarly support a claim of intentional infliction of emotional distress.  (*See, e.g.*, Doc. 71 at 4; Doc. 72 ¶ 21.)

Even given the special solicitude afforded pro se litigants, this latter set of allegations is too "fanciful, fantastic or delusional" to withstand a motion to dismiss.  *Gallop*, 642 F.3d at 368.  Her allegations paint the picture of a vast conspiracy in which Columbia has carried out a bribery campaign targeting her sorority sisters in an effort to convince them to stalk or kill Campbell, (Doc. 71 ¶¶ 16–17), a coordinated campaign of harassment and assassination attempts, (Docs. 66–67, 74, 78, 81, 86), and a scheme in which the governor of Pennsylvania, the Staff Member, and a Pennsylvania state trooper were bribed to file a false police report implicating Campbell in various crimes, (Doc. 72 ¶¶ 7, 8–9, 12, 13–14).  The verification Campbell has provided for these claims consists primarily of police reports and court documents alleging an extended campaign of harassment on her part against the Staff Member, (*see, e.g.*, Doc. 108-1 ¶¶ 2 a–e),

15

and along with highly suspect "confession letters" purportedly sent to her by Columbia trustees and members of the Pennsylvania governor's staff, (Docs. 80, 89, 94).  In other words, the only connections to Columbia are the conclusory or fantastical allegations by Campbell.

Courts in this District, faced with claims based on similarly fantastical theories have consistently dismissed them for failure to state a claim, even when the plaintiff proceeded pro se. *See, e.g.*, *Sanders v. New York Times*, No. 23-CV-2105 (LTS), 2023 WL 3724818, at *5 (S.D.N.Y. May 30, 2023) (a pro se "Plaintiff's generalized assertions – that the United States military is attempting to kill her and that the defendant media companies have failed to report her allegations – do not provide any plausible factual support for a viable legal claim and appear to rise to the level of the irrational."); *Shukla v. Deloitte Consulting LLP*, No. 19-CV-10578 (AJN), 2021 WL 1131507, at *2 (S.D.N.Y. Mar. 24, 2021) (dismissing pro se complaint where claims were not "grounded in reality"); *Burke v. Verizon Commc'ns, Inc.*, No. 18 CIV. 4496 (PGG), 2019 WL 13146782, at *11 (S.D.N.Y. Mar. 29, 2019) (dismissing a pro se plaintiff's complaint which "plead[] a host of confusing and fantastical allegations concerning Verizon, including that it has engaged in a myriad of illegal activities over the years."); *Calderon v. Int'l Monetary Fund*, No. 22-CV-7807 (LTS), 2022 WL 4485342, at *2 (S.D.N.Y. Sept. 26, 2022) ("Plaintiff provides no facts supporting her assertion that IMF hacked her emails and her television and constantly bothers her and sends text messages to her.  Allegations such as these are legally classified as frivolous."); *Cornelius v. Jagger*, No. 22-CV-3405 (LTS), 2022 WL 2819443, at *3 (S.D.N.Y. July 18, 2022) ("Plaintiff's assertions – that Defendant Jagger planned to buy a house with her in Illinois, took her money and won't give it back until she gives him a baby, was mentally and emotionally abusive toward her, and used other celebrities to antagonize Plaintiff – do not provide any plausible factual support for her claim and appear to rise to the level of the

16

irrational.")  Thus, none of Campbell's allegations state a cognizable claim for intentional infliction of emotional distress.

### B. *Motion to Seal*

Campbell's motions to seal must be denied given the stringent standard for sealing an entire case.  Sealing a case file is a "last resort."  *Mamatkulov*, 2023 WL 358790, at *2.  Campbell's grounds for sealing the case are that she wishes to avoid directing excessive media attention to this case out of concern for the stresses such attention would put on her health.  (Doc. 83 at 2–3.)  She also asserts safety concerns given the alleged conspiracy against her.  (*Id.* 3.)  Given the high bar for sealing an entire docket, neither of these concerns are sufficient to merit sealing the entire docket.  A desire to prevent the press and public from accessing case materials is insufficient to warrant sealing, particularly the sealing of an entire case.  Furthermore, for the reasons discussed in § III.A, I do not find the alleged conspiracy to be plausible.  Thus, by extension I do not find it to be a credible basis to seal this docket.  Campbell's motions to seal this case are therefore denied.

### C. *Leave to Amend*

Leave to amend or permit the filing of a supplemental complaint would be futile.  By this point, Campbell has filed four complaints or amended complaints alleging substantially the same issues:  (1) the initial complaint in *Campbell I*, Doc. 1, (2) the amended complaint in *Campbell I*, *id.* Doc. 5, (4) the initial complaint in this matter, (Doc. 1), and the amended complaint in this matter, (Doc. 31).  She has also sought leave to file supplemental complaints.  (Docs. 70–72.)

I have liberally interpreted her pleadings and opposition papers, and therefore referred to the vast array of additional information that Campbell has filed in various opposition papers, filings, and supplemental complaints.  She has thus had numerous opportunities to state a claim

17

for which relief might be granted.  With regard to Campbell's claims of intentional infliction of emotional distress, both Chief Judge Swain and I have determined that the denial of grant funding Campbell complains of is insufficient conduct to state a claim.  *Campbell I,* Doc. 6 at 7, § III.A *supra*.  As for the broader conspiracy she alleges, further amended pleadings will not render the allegations less fanciful and more plausible.  Courts routinely look to proposed amended complaints to assess futility, *Panther Partners Inc.*, 347 F. App'x at 622, and all of Campbell's proposed additional or supplemental pleadings simply expound on the implausible conspiracy claims, (Docs. 70–72).

Both I and Chief Judge Swain have attempted to provide Campbell with every reasonable opportunity to be heard and to amend her claims to state a cause of action.  In *Campbell II* alone, she has made 80 filings in 10 months, and I have considered these materials in rendering this decision.  Ultimately, however, "the problem with plaintiff's causes of action is substantive; better pleading will not cure it."  *Igarashi*, 438 F. App'x at 60 (cleaned up).  I therefore decline to grant Campbell what would amount to a fifth opportunity to amend her complaint.

### IV.     Conclusion

Columbia's motion to dismiss is GRANTED and this matter is dismissed with prejudice.  Campbell's motions to seal this case are DENIED.  In light of this dismissal, the various other motions filed by Campbell are moot.  The Clerk of Court is therefore respectfully directed to terminate all open motions in this matter and close this case.

Additionally, it appears that, during the pendency of this matter, Campbell may have been incarcerated.  *See Commonwealth of Pennsylvania v. Jody A. Campbell*, No. CP-46-MD-0001421-2023 (Pa. Ct. Com. Pl. May 19, 2023) (indicating that Campbell had been confined to the Montgomery County Prison since July 20, 2023).

Accordingly, the Clerk of Court is respectfully directed to mail a copy of this Opinion & Order, along with a change of address form, to the following addresses:

>Montgomery County Correctional Facility
>Jody-Ann Campbell
>60 Eagleville Rd, Eagleville, PA 19403

and

>Jody-Ann Campbell
>502 Janeway Dr. Apt.74, Norristown, PA 19401

SO ORDERED.

Dated: September 15, 2023
     New York, New York

*Vernon Broderick* (signature)

Vernon S. Broderick
United States District Judge